**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| SHELLY CAMPBELL, JOSEPH CAMPBELL, and CYNTHIA M. JACKSON, individually and on behalf of all others similarly situated, ) ) ) ) | Civil Action No. |
| ) | JURY TRIAL DEMANDED |
| Plaintiffs, ) ) | |
| v. ) ) | |
| THE DILLON LAW FIRM, P.C. and ARROW FINANCIAL SERVICES, LLC, ) ) ) | |
| Defendants. ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs, SHELLY CAMPBELL, JOSEPH CAMPBELL and CYNTHIA M. JACKSON,

individually and on behalf of all others similarly situated, allege as follows:

**I.  INTRODUCTION**

1.       This is an action pursuant to the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C.A. § 1692, *et seq.*, and the South Carolina Unfair Trade Practices Act South Carolina Code

§ 39-5-10, *et seq*. ("SCUTPA").  Plaintiffs, SHELLY CAMPBELL, JOSEPH CAMPBELL and

CYNTHIA M. JACKSON, individually and on behalf of all others similarly situated, bring this

action against THE DILLON LAW FIRM, P.C. and ARROW FINANCIAL SERVICES, LLC

(collectively "Defendants"), based on Defendants' unfair and deceptive practices in collecting

allegedly defaulted debts which they have purchased from others after the borrowers' alleged

default at a discount.

## II.  THE PARTIES

2.      Plaintiffs SHELLY CAMPBELL and JOSEPH CAMPBELL are lawfully married and reside, and at all times relevant to this Complaint did reside, in Charleston, South Carolina.

3.      Plaintiff CYNTHIA M. JACKSON resides and at all times relevant to this Complaint did reside, in Awendaw, South Carolina.

4.      Plaintiffs SHELLY CAMPBELL, JOSEPH CAMPBELL and CYNTHIA M. JACKSON and members of the putative classes alleged herein shall hereinafter be referred to collectively as "Plaintiffs."

5.      Defendant THE DILLON LAW FIRM, P.C. is a law firm organized as a Georgia professional corporation, with principal place of business located at 1130 Hurricane Shoals Road, Suite 600, Lawrenceville, Georgia 30043. At all relevant times hereto, Defendant THE DILLON LAW FIRM, P.C. was and is a debt collector as defined by the FDCPA.

6.      Defendant THE DILLON LAW FIRM, P.C. has significant contacts in the State of South Carolina and the activities complained of herein occurred, in whole or in part, in South Carolina.

7.      Defendant ARROW FINANCIAL SERVICES, LLC is a Delaware limited liability company, with its principal place of business located at 5996 W. Touhy Avenue, Niles, Illinois, 60714.  At all relevant times hereto, Defendant ARROW FINANCIAL SERVICES, LLC was and is a debt collector as defined by the FDCPA.

8.      Defendant ARROW FINANCIAL SERVICES, LLC has significant contacts in the State of South Carolina and the activities complained of herein occurred, in whole or in part, in South Carolina.

2

## III.  JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as this civil matter arises under the laws of the United States.

10.     This Court has personal jurisdiction over the parties in this action by the fact that Defendants regularly transact business or are corporations duly licensed to do business in South Carolina.

11.     Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District, and because there is personal jurisdiction in this District over the named Defendants because they regularly conduct business in this judicial district.

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 § U.S.C. 1367(a) because the claims are so related to the other claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## IV.  FACTS

### A.  The Debt Buying Industry

13.     Defendant ARROW FINANCIAL SERVICES, LLC is a "debt purchaser" or "debt buyer," meaning it is engaged in the business of purchasing or acquiring allegedly defaulted debts which were originally owed to others, at a discount, and then attempts to collect on these purchased debts.

14.     The debt buying industry has its origins in the 1987 Savings and Loan crisis, when a handful of debt buyers began purchasing and collecting on debts owed to defunct Savings and Loans whose assets were auctioned off by the Resolution Trust Corporation.  Subsequently, debt buyers began purchasing charged off consumer debt from creditors.

15.     When a debt buyer purchases a portfolio of debts, it becomes legal owner by assignment of the debts, but generally obtains little information regarding the underlying transaction.

16.     Typically, a debt buyer receives an electronic file that includes only a person's name, social security number, last known address, an amount purported to be owed, the date the debt was charged off, and the date and amount of the last payment.

17.     The price of a debt portfolio to the debt buyer depends primarily on how old the debt is, and how many times it has been previously placed for collection.  A "fresh" portfolio that is only three to six months old and never placed for collection is worth the most, while "quad" debt, more than three years old and/or placed with collectors three or more times, is worth the least.

18.     Regardless of the rating, however, such debts sell for less than a penny per dollar of face value:  "Fresh" debt is sold for between $0.055 and $0.075 and "quad" debt is sold for between $0.004 and $0.01 per dollar of face value in January 2009.

19.     A debt buyer therefore can reap a tremendous profit from a portfolio of charged off debt if it is able to collect even a fraction of the face value of the total debt portfolio.

20.     Debt buyers use various methods to attempt to collect debts, including sending letters, contacting the purported debtor, and reporting debts to credit bureaus. However, over the past decade, debt buyers have turned increasingly to filing lawsuits to attempt to collect debts.  The FTC in 2009 observed that "the vast number of debt collection suits in recent years has posed considerable challenges to the smooth and efficient operation of court," and that a majority of cases in any given day in state court dockets may be debt collection cases.

21.    Litigation is a favored tactic of debt buyers because case outcomes overwhelmingly favor the debt buyer in a debt collection action, as most debt collection actions by debt buyers result in default judgments.

22.    In a July 2010 report, the Federal Trade Commission identified five issues related to debt litigation that raised "substantial consumer protection concerns." These were (1) filing of suits based on insufficient evidence; (2) failure to properly notify consumers of lawsuits; (3) the high prevalence of default judgments; (4) improper garnishment; and (5) suing or threatening to sue on time-barred debt.

23.    Because debt buyers have limited information on the underlying debts they purchase, complaints filed by debt buyers rarely include sufficient information for a consumer to determine whether a debt is owed, or if it is time-barred.

24.    In the vast majority of lawsuits filed by debt buyers, consumers are unrepresented, and most result in default judgments.

25.    Alleged debtors often fail to respond because of a lack of knowledge of the legal system, a lack of understanding of their legal rights and obligations, or the cost of responding.

26.    Even where an alleged debtor does respond, because debt buyers have limited information about the debt, they may not be ready to proceed and must seek extensions or a dismissal without prejudice. In its July 2010 report, the FTC noted that in addition to the burdens this practice imposes on the court system, it is inconvenient and costly to consumers.

27.    Additionally, because of the limited information debt purchasers have regarding the underlying debt, the letters and court filings used to attempt to collect the

purported debt may obscure or misstate the amount owed, the applicable interest rate, and the legal status of the debt.

28.    Alleged debtors also may not know their legal rights with respect to time-barred debt.  Because most consumers do not know or understand their legal rights, they may not take action to defend a legally meritless lawsuit.

**B.  Facts Related to Plaintiffs SHELLY and JOSEPH CAMPBELL**

29.    On December 18, 2009, Defendant ARROW FINANCIAL SERVICES, LLC filed Case Number 09-CP-10-7879 in the Court of Common Pleas, Ninth Judicial Circuit in Charleston, South Carolina, against SHELLY and JOSEPH CAMPBELL.

30.    Defendant THE DILLON LAW FIRM, P.C. was the attorney of record for Defendant ARROW FINANCIAL SERVICES, LLC.

31.    The complaint in 09-CP-10-7879 alleged SHELLY and JOSEPH CAMPBELL owed $4,482.87 on a credit account issued by GE Money Bank and subsequently sold to ARROW FINANCIAL SERVICES, LLC.  The complaint recited that interest was accruing on the purported debt at a rate of 8.75 % per annum, and had been accruing since August 26, 2007. The complaint alleges that as of December 14, 2009, the interest accrued was $2,355.80.

32.    The complaint did not attach a copy of the purported credit agreement, did not include the date on which the agreement was purportedly entered, and did not include the date of last payment or the purported breach of the agreement.

33.    Plaintiffs SHELLY and JOSEPH CAMPBELL were served with a copy of the summons and complaint in civil action number 09-CP-10-7879 on January 12, 2010.

34.    Prior to May 10, 2010, Plaintiffs SHELLY and JOSEPH CAMPBELL contacted Defendant THE DILLON LAW FIRM, P.C. and agreed to a monthly payment plan.

35.    In a letter dated May 10, 2010, Defendant THE DILLON LAW FIRM, P.C. enclosed a copy of an executed but not filed Withdrawal of Motion for Default dated May 11, 2010.

36.    On May 11, 2010, a Motion for Default was filed in the underlying case.

37.    On May 12, 2010, an Order for Default signed by the presiding judge was filed in the underlying case.

38.    In correspondence to Plaintiffs SHELLY and JOSEPH CAMPBELL dated May 11, 2010, Defendant THE DILLON LAW FIRM, P.C. stated that Defendant ARROW FINANCIAL SERVICES, LLC agreed to a payment plan for repayment of the alleged debt.

39.    The May 11, 2010 letter further stated "**As long as the following terms are met, we will not levy on your assets.**" (emphasis in original).

40.    On May 11, 2010, Defendants could not levy against Plaintiffs SHELLY and JOSEPH CAMPBELL's assets because no judgment existed.

41.    The May 11, 2010 letter further stated, "Enclosed please find the Consent we will need to verify this payment arrangement."

42.    The enclosed document, however, was not a verification of the monthly payment arrangement but was a Consent Judgment that Defendant THE DILLON LAW FIRM, P.C. intended to file, notwithstanding the representation in the May 11, 2010 letter that litigation would not proceed if the signed Consent and payment was received by June 25, 2010.

43.    The May 11, 2010 letter further stated that the payment plan terms would include "accruing interest at the rate of 24.750 percent per annum."

44.    By Order of the South Carolina Supreme Court dated January 4, 2010, "for the period January 15, 2010, through January 14, 2011, the legal rate of interest on judgments and money decrees is 7.25% compounded annually."

45.    The May 11, 2010 letter further stated that the payment plan would result in the repayment of the "entire amount of $8,349.16."

46.    The Order of Judgment entered in the underlying case states that the entire amount of the judgment is $7,484.43.

**C.        Facts Related to Plaintiff CYNTHIA M. JACKSON**

47.    On December 29, 2009, Defendant ARROW FINANCIAL SERVICES, LLC filed Case Number 09-CP-10-8110 in the Court of Common Pleas, Ninth Judicial Circuit in Charleston, South Carolina, against Plaintiff CYNTHIA M. JACKSON.

48.    Defendant THE DILLON LAW FIRM, P.C. was the attorney of record for Defendant ARROW FINANCIAL SERVICES, LLC.

49.    The complaint in 09-CP-10-8110 alleged CYNTHIA M. JACKSON owed $1,620.78 on a credit account issued by Citibank (South Dakota), N.A. and subsequently sold to ARROW FINANCIAL SERVICES, LLC.  The complaint recited that interest was accruing on the purported debt at a rate of 18.00 % per annum, and had been accruing since March 6, 2008. The complaint alleges that as of December 17, 2009, the interest accrued was $520.32.

50.    The complaint did not attach a copy of the purported credit agreement, did not include the date on which the agreement was purportedly entered, and did not include the date of last payment or the purported breach of the agreement.

8

51.     Plaintiff CYNTHIA M. JACKSON was served with a copy of the summons and complaint in civil action number 09-CP-10-8110 on January 4, 2010, through substitute service on her granddaughter.

52.     In correspondence to Plaintiff CYNTHIA M. JACKSON dated January 18, 2010, Defendant THE DILLON LAW FIRM, P.C. stated that Defendant ARROW FINANCIAL SERVICES, LLC agreed to a payment plan for repayment of the alleged debt.

53.     The January 18, 2010 letter further stated, "**As long as the following terms are met, we will not levy on your assets.**" (emphasis in original).

54.     On January 18, 2010, Defendants could not levy against Plaintiff CYNTHIA M. JACKSON's assets because no judgment existed.

55.     The January 18, 2010 letter further stated, "Enclosed please find the Consent we will need to verify this payment arrangement."

56.     The enclosed document, however, was not a verification of the monthly payment arrangement but was a Consent Judgment that Defendant THE DILLON LAW FIRM, P.C. intended to file, and did file in the underlying case on April 29, 2010, notwithstanding the representation in the January 18, 2010 letter that litigation would not proceed if the signed Consent and payment was received by February 1, 2010.

57.     The January 18, 2010 letter further stated that the payment plan terms would include "accruing interest at the rate of 18.000 percent per annum."

58.     By Order of the South Carolina Supreme Court dated January 4, 2010, "for the period January 15, 2010, through January 14, 2011, the legal rate of interest on judgments and money decrees is 7.25% compounded annually."

## V. <u>CLASS ACTION ALLEGATIONS</u>

59.    Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") pursuant to Rules 23(a) and 23(b) of the Federal Rule of Civil Procedure and the case law thereunder.  Plaintiffs seek to represent the following Classes:

> **Limitations Class:** All individuals against whom Defendants filed lawsuits seeking collection on a debt on a purported agreement for the extension of credit more than three years after the date of the last payment made under said agreement.  Excluded from the Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

> **Correspondence Class:** All individuals who were sent correspondence substantially in the form attached as Exhibit A by Defendants Excluded from the Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definition at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

60.    <u>Numerosity</u>: The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class Members is unknown at this time, Plaintiffs are informed and believe that the entire Class includes hundreds of members.

61.    <u>Commonality</u>: Common questions of law or fact are shared by the Class Members. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

> a)   Whether Defendants' acts and practices violate the FDCPA;

> b)   Whether Defendants engaged in unfair business practices;

> c)   Whether Plaintiffs and the Class are entitled to actual damages;

d)  Whether Plaintiffs and the Class are entitled to punitive damages; and

e)  Whether Plaintiffs and the Class are entitled to equitable relief, including but not limited to restitution and injunctive relief.

62.    Typicality: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the Class Members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the Class Members are based on the same legal theories.

63.    Adequacy: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other members of the Class that Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend on prosecuting this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

64.    Ascertainable Class: The proposed Class is ascertainable in that the members can be identified and located using information contained in Defendants' debt purchase portfolio records.

65.    This case is brought and can be maintained as a class action under Rules 23(b)(1), 23(b)(2), and 23(b)(3):

a)  Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and each Class Member.  Prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of individual Class Members to protect their interests;

11

  b) <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>: Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

  c) <u>Predominant Questions of Law or Fact</u>: Questions of law or fact common to the Class Members, including those identified above, predominate over questions affecting only individual Class Members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Further, an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudicating each such individual lawsuit would be substantial.

## VI. <u>FIRST CAUSE OF ACTION</u>

**Violations of the Fair Debt Collection Practices Act, 15 U.S.C.A. §1692, *et seq.***

66. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

67. Defendants' actions recited above violate the Fair Debt Collection Practices Act, 15 U.S.C.A. §1692, *et seq*., by, among other things:

  a) misrepresenting the amount of the debt;

  b) misrepresenting the legal status of the debt;

  c) threatening to take a legal action that, at the time of the threat, could not legally be taken;

d)   utilizing false representations and deceptive means to collect a purported debt;

e)   falsely representing or implying that documents were not legal process; and

f)   collecting and charging interest and fees in excess of that permitted by law and/or not authorized by the agreement creating the purported debt.

68.     As a direct and proximate result of Defendants' violations, Plaintiffs and the Class are entitled to statutory damages, actual damages, injunctive relief and reasonable attorneys' fees as provided by statute.

## VII.  SECOND CAUSE OF ACTION

### Violations of the South Carolina Unfair Trade Practices Act, South Carolina Code § 39-5-10, *et seq.*

69.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

70.     At all times relevant hereto, there was in full force and effect the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et. seq*.

71.     Section 39-5-20 of the SCUTPA provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

72.     Debt collection activities are covered by the SCUTPA.

73.     Defendants have committed unfair and/or deceptive acts by engaging in the acts and practices alleged herein.

74.     The acts alleged herein have an impact on the public interest and have the potential for repetition.

75.     Plaintiffs and the Class have been damaged in that, among other things, they have paid or been charged interest and fees in excess of that allowable by law, they have been, by

13

deception and misrepresentations, induced to sign Consent Judgments, and they have been induced to pay money under false pretenses.

76.    As a direct and proximate result of Defendants' violations, Plaintiffs and the Class are entitled to actual damages, treble damages, injunctive relief and reasonable attorneys' fees as provided by statute.

## **PRAYER OF RELIEF**

**WHEREFORE**, Plaintiffs and all Class Members pray for judgment against each Defendant, jointly and severally, as follows:

A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.    For actual damages according to proof;

C.    For compensatory damages as permitted by law;

D.    For consequential damages as permitted by law;

E.    For statutory damages as permitted by law;

F.    For punitive damages as permitted by law;

G.    For equitable relief, including restitution;

H.    For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair competition;

I.    For interest as permitted by law;

J.    For injunctive relief;

K.    For reasonable attorneys' fees and costs; and

L.    For such other relief as is just and proper.

## **JURY TRIAL DEMAND**

The Plaintiffs hereby respectfully request a jury trial on all issues so triable.

Respectfully submitted,

s/Daniel O. Myers
Daniel O. Myers (I.D. #9884)
RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLC
1037-A Chuck Dawley Blvd.
Mt. Pleasant, South Carolina 29464
(843) 727-6500 (Telephone)
(843) 216-6509 (Facsimile)
dmyers@rpwb.com

ATTORNEY FOR PLAINTIFFS

Charleston, South Carolina
Dated: August 5, 2010